UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC J. SHIELDS,<br><br>                              Petitioner,<br><br>          -against-<br><br>D. STALLONE, Superintendent, Cayuga<br>Correctional Facility,<br><br>                              Respondent. | 14cv7596 (PKC) (DF)<br><br>**REPORT AND<br>RECOMMENDATION** |

**TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

By way of an Amended Petition, Eric J. Shields ("Petitioner") seeks a writ of habeas

corpus under 28 U.S.C. § 2254, following his conviction in state court, upon a jury verdict, of

Enterprise Corruption, Scheme to Defraud in the First Degree, Grand Larceny in the First and

Second Degrees, and Conspiracy in the Fifth Degree.  (*See* Amended Petition Under 28 U.S.C.

§ 2254 for a Writ of Habeas Corpus by a Person in State Custody, dated Jan. 14, 2015

("Amended Petition" or "Am. Pet.") (Dkt. 10).)  At the time that he filed his original Petition in

this Court, Petitioner was incarcerated at the Cayuga Correctional Facility in Moravia, New

York, where he was serving a sentence of five-and-one-half to 16-and-one-half years of

imprisonment.  (*See* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in

State Custody, dated Sept. 5, 2014 ("Petition" or "Pet.") (Dkt. 2), ¶ 5.)  On November 17, 2015,

however, Petitioner was granted parole, and he was released from prison on or about March 17,

2016.[1]  (*See* Letter from Eric J. Shields, dated Dec. 14, 2015 (Dkt. 26); Change of Address Form,

dated Mar. 17, 2016 (Dkt. 28).)

---

[1] The Court notes that Petitioner's release from incarceration does not moot the Petition,
nor does it render the Petition dismissible under Section 2254's "in custody" requirement.  *See*
*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("An incarcerated convict's (or a parolee's) challenge to
the validity of his conviction always satisfies the case-or-controversy requirement, because the

In the Amended Petition, which was filed *pro se*, Petitioner raises two claims, one alleging ineffective assistance of trial counsel, and the other ineffective assistance of appellate counsel.  For his first claim, Petitioner asserts that his trial counsel deprived him of constitutionally effective assistance by failing to notify him of a plea bargain purportedly offered by the prosecution or to advise him adequately as to whether he should accept that offer. (*See* Am. Pet. ¶¶ 20-35.)  For his second claim, Petitioner asserts that the same attorney (who also served as Petitioner's appellate counsel) then failed to raise, on direct appeal, an ineffective-assistance-of-trial-counsel claim based on counsel's own deficient performance in connection with the purported plea offer.  (*See id.* ¶¶ 36-48.)  For the reasons set forth below, I recommend that the Amended Petition be dismissed.

## BACKGROUND

### A.    Factual Background

Based on the testimony and other evidence presented by the prosecution at Petitioner's trial, Petitioner – through his involvement with AFG Financial Group, Inc. ("AFG"), a mortgage brokerage firm of which Petitioner was the co-founder and chief executive officer – participated in a mortgage fraud enterprise.  (*See* Transcript of Trial, conducted June 4-22, 2010 ("Trial Tr.) (Dkts. 21 to 21-26), at 275, 610-11, 2958.)  The firm had offices in Garden City, New York, and Media, Pennsylvania.  (*Id.*, at 272, 275, 501-02, 691, 2957, 3011.)  Although Petitioner was based in Pennsylvania and ran the Pennsylvania office, the prosecution's evidence showed that

---

incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."); *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (noting that a prisoner who is placed on parole remains "in custody" under his unexpired sentence).  Even after a term of parole ends, a habeas petition is not considered moot, as long as there remain collateral consequences of the conviction.  *See Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (citing *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)).

Petitioner regularly visited the New York office, that he maintained close personal and business relationships with his New York colleagues, and that he frequently discussed and participated in fraudulent deals closed by the New York office.  (*Id*., at 365-66, 670, 841-44, 856-58, 969-71, 1013-14, 2969-72, 3013-21, 3028-30).  Furthermore, AFG's New York mortgage broker license was held in Petitioner's name.  (*Id*., at 774, 2238, 3011.)

The purpose of AFG's criminal enterprise was to defraud lending institutions and collect mortgage funds illegally.  (*Id*., at 692-94, 2959-60.)  The trial evidence showed that the business of AFG's New York office predominantly served this criminal endeavor, while legitimate, arms-length transactions made up less than five percent of the office's total business.  (*Id*. at 692.)  In this regard, although the typical function of a mortgage brokerage firm is to pair home buyers with lending institutions and oversee the loan application process (*id*., at 107-09), AFG exceeded this traditional role by taking part in almost every step of the real estate transactions in which it was involved.  The State's investigation revealed that members of AFG targeted distressed residential real estate properties, inflated the value of those properties by bribing appraisers or tampering with appraisal reports, and then paired the properties with "straw buyers" who had no intention of occupying the properties or making mortgage payments.  (*Id*., at 947-980, 1012-13, 2280.)  Instead, these individuals were used by AFG's brokers as nominal buyers, for the sole purpose of securing mortgages from lending institutions.  (*Id*., at 692-93, 2214-15.)  The straw buyers generally had high credit scores, making them attractive borrowers to banks and other lenders, but, in reality, had low incomes and minimal assets.  (*Id*., at 984, 2630-34, 3077.)  AFG paid these straw buyers several thousand dollars per mortgage transaction, falsely promising the buyers that they would not be responsible for making mortgage payments and that the transactions would have no impact on their credit.  (*Id*., at 984, 994-95, 2631-32, 2379-83.)

AFG also bribed employees of lending institutions and banks to approve fraudulent property appraisals, loan applications, and verification documents, or otherwise to evade the lenders' regular underwriting guidelines.  (*Id*., at 730, 1023-27, 3082-84.)  After securing buyers and lenders, AFG employees staged property closings at their office in New York, at which lawyers paid by AFG would refrain from "ask[ing] any questions," and would advise the straw buyers "just to sign the papers wherever the signature [was] required."  (*Id*., at 880.)  Moreover, unlike at a legitimate closing, where the "disbursement sheet" governing the distribution of mortgage funds would generally be completed by the attorney of the seller or lender, AFG's brokers personally participated in closings in order to control the disbursement of proceeds among the individuals involved in AFG's network of bribes and payoffs.  (*Id*., at 120, 307-08, 880-85, 3024-25.)  Ultimately, the funds were laundered through a variety of avenues.  (*Id*., at 309-12, 895-97, 965-68, 2093-2107, 3027.)

This enterprise consisted of more than 20 members, and, although Petitioner maintained that he was unaware of the New York office's illegal transactions because his colleagues actively hid them from him, the prosecution's evidence showed that Petitioner was aware of the fraudulent mortgage deals (*id*., at 847-48, 969-70, 2956, 2966-67, 3009-17), had the power to terminate those deals (*id*., at 863), and received payments from AFG's unlawful transactions (*id*., at 1557, 3467).  Additionally, the prosecution presented evidence at trial connecting Petitioner to several specific properties and fraudulent transactions.  (*Id*., at 763-65, 852-53, 1479-84, 1557-58, 1576, 3016-17.)

### B.   **Procedural History**

#### 1.   **Pretrial Proceedings**

On January 29, 2010, Justice Carol Berkman of the Supreme Court of the State of New York, New York County, held a calendar call for the AFG case, which involved a number of defendants accused of participating in the mortgage fraud enterprise.  (*See* State Court Record, dated Apr. 28, 2015 ("SR.") (Dkt. 21-27 to 21-31), at 342-49 (Transcript of Calendar Call, conducted Jan. 29, 2010).)  Petitioner was personally in attendance at the calendar call, and was represented by Michael G. Santangelo, Esq. ("Santangelo") (*id.*, at 343), who would go on to represent him at his trial and on direct appeal.  During this proceeding, Justice Berkman commented on the seriousness of the charges against the AFG defendants and stated that "continued litigation may not be in any of the defendants' best interest since the People appear to have an extraordinarily strong case."  (*Id.*, at 344.)  Referring to the defendants' possible sentencing exposure, Justice Berkman further remarked that "for some of the defendants still here the numbers are pretty high."  (*Id.*, at 345.)  Finally, before confirming the next calendar date, Justice Berkman stated that she expected some of the defendants to "dispose of this case." (*Id.*)

Two months later, on March 19, 2010, Justice Berkman held another calendar call.  (*See id.*, at 351-55 (Transcript of Calendar Call, conducted Mar. 19, 2010).)  Petitioner contends that, this time, he was not present.  (*Id.*, at 428; Am. Pet. ¶ 27.)  Further, Santangelo did not appear; instead, Joel Scott, Esq.,[2] covered the conference in Santangelo's place.  (Trial Tr., at 353.)

---

[2] Although Santangelo's colleague identified himself on the record of the March 19 conference as "Joel Scott[,] of counsel to the Law Office of Michael Santangelo" (*id.*, at 353), Santangelo stated – in an affirmation submitted in connection with Petitioner's postconviction motion to vacate the judgment against him – that the name of this attorney was "Joel Scott Ray, Esq." (*id.*, at 436; *see also* Procedural History, *infra*, at 4(d)).

Once again, Justice Berkman underscored both the seriousness of the charges against Petitioner and the strength of the prosecution's case, stating, "If I were Mr. Shields' lawyers I would be trying to minimize his exposure by a plea arrangement rather than proceeding forward." (*Id*., at 355.)

Petitioner, however, did not enter into a plea deal, and eventually proceeded to trial.

### 2.   Trial and Sentencing

Petitioner's jury trial began on June 4, 2010, with Justice Berkman presiding. (*See generally* Trial Tr.) On July 30, 2010, the jury returned a verdict convicting Petitioner of all the counts submitted to it. (*See* SR., at 115.) On September 21, 2010, Justice Berkman sentenced Petitioner to terms of five-and-one-half to 16-and-one-half years of incarceration on the counts of enterprise corruption and first degree larceny; one-and-one-third to four years for a scheme to defraud; one year for conspiracy; and five to 15 years for each count of grand larceny, with all terms to run concurrently. (*See id*., at 305-26 (Transcript of Sentencing, conducted Sept. 21, 2010).)

During the sentencing hearing, in arguing that the prosecution's request of seven to 21 years' imprisonment was excessive, Santangelo recounted to the court the following discussion that he claimed had taken place between himself and Assistant District Attorney ("ADA") Edward Starishevsky ("Starishevsky"): "[W]hile the jury was deliberating Mr. Starishevsky said to me why [didn't] your client take a plea and I said to him we never got an offer. He said to me we offered you probation and I said [']Ted, if I had been offered that, I was duty bound to tell my client.[']" (*Id*., at 321.) Santangelo continued, "I'm telling the court as an officer of the court, [that an offer of probation] was never conveyed to me and I would have communicated [such an offer] to my client . . . ." (*Id*.) Shortly thereafter, Starishevsky

addressed the court and clarified that, just before Petitioner's trial commenced, the prosecution had offered him a plea deal for three to nine years of incarceration.  (*Id*., at 323) ("[J]ust immediately prior to trial A.D.A. Wilson communicated to Mr. Santangelo that the People's offer was three to nine years.  Three to nine years.")  Starishevky also alluded to a "different offer" that had been made at the "very genesis" of the investigation into AFG, when the State was still hopeful that Petitioner would cooperate in that investigation, but Starishevky did not articulate the terms of that offer to the court.  (*Id*.)

Petitioner, himself, also took the opportunity to address the court during sentencing, yet he made no mention of his attorney's failure to communicate any plea offer.  Instead, Petitioner continued to maintain his innocence, contending that that, in all of his years operating AFG in Pennsylvania, he "didn't have any issues with any type of lending institutions or anything," and that he "did not really get involved in the day-to-day operations" of AFG's New York office.  (*Id*., at 325-26.)

### 3.   **Direct Appeal**

On September 23, 2010, Petitioner filed a timely notice of appeal (*id*., at 8), and, on September 2, 2011, his attorney (Santangelo) filed a brief on his behalf with the Appellate Division, First Department (*see id*., at 1-101 (Brief for Defendant-Appellant, dated Sept. 2, 2011)).  In that appellate brief, Petitioner raised three claims:  (1) that the trial court had denied him a fair trial when it (a) prevented him from cross-examining certain witnesses effectively, (b) allowed a non-expert investigator to give prejudicial opinion testimony, (c) failed to cure a witness' "unexpected exposition" about Petitioner's commission of certain uncharged crimes, and (d) permitted the prosecutor to engage in misconduct during summation (*id*., at 43-68); (2) that he was prejudiced by the introduction of certain charts into evidence (*id*., at 69-71); and

(3) that the jury verdict was against the weight of the evidence (*id*., at 72-92).  Petitioner further

argued that, should the Appellate Division determine not to set aside the verdict, it should

nonetheless reduce his sentence in the interest of justice.  (*Id*., at 93-100.)  None of the claims

that Petitioner raised on direct appeal are before this Court, in this habeas proceeding.

By decision dated November 27, 2012, the Appellate Division rejected each of

Petitioner's claims and unanimously affirmed his conviction and sentence.  (*See id*., at 288-89;

*People v. Shields*, 954 N.Y.S.2d 97 (1st Dep't 2012).)  Petitioner did not seek leave to appeal the

Appellate Division's decision to the New York Court of Appeals.

### 4.    Section 440 Motion To Vacate the Judgment

On June 28, 2013, proceeding *pro se*, Petitioner filed a motion in the trial court to vacate

his judgment of conviction, pursuant to Section 440 of the New York Criminal Procedure Law.[3]

(*See* SR., at 291-92 (Notice of Motion to Vacate Judgment and Set Aside Sentence, dated

June 28, 2013).)  In an Affidavit in support of his Section 440 motion, Petitioner asserted that his

trial counsel was ineffective for failing to communicate to him:  (1) the seriousness of the

charges against him and his sentencing exposure on those charges; and (2) the fact that the

People had supposedly made multiple plea offers.  (*Id*., at 293-303 (Affidavit in Support of

Notice of Motion to Vacate Judgment and Set Aside Sentence, dated June 28, 2013).)

Specifically, Petitioner contended, based on the discussion that occurred on the record during his

sentencing, that the prosecution had offered him a sentence of probation "as an alternative to

---

[3] Although Petitioner identified his motion as being brought under N.Y.C.P.L. Section
440.30 (*see id*.), that section merely sets forth the procedure for making a motion to vacate a
judgment under one of the grounds separately set forth in Section 440.10.  Thus, this Court
assumes that Petitioner's motion was intended to be made pursuant to Section 440.10.  For the
purposes of this Report and Recommendation, however, this Court will simply refer to
Petitioner's motion as a "Section 440" motion.

trial," and that he would have accepted that offer, had he been made aware of it and of the severity of the sentence he could have faced if convicted at trial.  (*Id*., at 298-99.)

The State opposed the motion, providing the court with Affirmations from ADA Harold Wilson ("Wilson") (*See id*., at 327-38 (Affirmation in Opposition to Defendant's Pro Se Motion to Vacate Judgment Pursuant to C.P.L. 440.30, dated Oct. 25, 2013)), ADA Starishevksy (*see id*., at 357-60 (Affirmation in Support of People's Response to Defendant's Pro Se Motion to Vacate Judgment Pursuant to C.P.L. 440.30, dated Oct. 23, 2013)), and former ADA Gary Fishman ("Fishman") (*see id*., at 362-64 (Affirmation in Support of People's Response to Defendant's Pro Se Motion to Vacate Judgment Pursuant to C.P.L. 440.30, dated Oct. 24, 2013)), as well as the transcripts of the January and March Calendar Calls (*id*., at 342-355).

### a.      ADA Wilson's Affirmation

In his Affirmation, Wilson noted that, while Petitioner claimed to have been unaware of the maximum sentence he faced, Petitioner did not indicate, in his Section 440 motion, what he thought his exposure was.  (*Id*., at 330.)  Further, Wilson pointed out that Petitioner did not allege that, had he been aware of the potential for a 25-year sentence, he would have pleaded guilty.  (*Id*.)  Wilson also noted that Petitioner's motion made no reference to the trial court's comments urging him – at a conference Petitioner had attended – to consider avoiding trial, given the strength of the prosecution's evidence and (as the trial judge had described it) the "pretty high" sentencing numbers Petitioner faced, should he go forward.  (*Id*.)  Additionally, Wilson noted that Petitioner's motion omitted any reference to discussions with his counsel regarding his potential sentence, or to a *New York Times* article that had apparently named Petitioner specifically, detailed the charges against him, and set out his sentencing exposure. (*Id*.)

9

Wilson did acknowledge, in his Affirmation, that he had communicated a plea offer to Santangelo in April 2010, except he stated that the actual offer had been for three-and-one-third to 10 years imprisonment, rather than three to nine years, as Starishevksy had stated during the sentencing hearing.  (*Id*., at 331.)  Wilson noted, however, that Petitioner's Section 440 motion was "unaccompanied by any affidavit or documentary support showing [that] [Petitioner] was unaware of the plea offer" that was made.  (*Id*.)  Wilson also argued that, although Petitioner gave a detailed explanation in his Section 440 motion as to why he would have accepted a plea offer of probation, he did not maintain that he would have accepted an offer of three to nine years' imprisonment (the offer Petitioner contended was made, based on the sentencing transcript), and could not credibly do so.  (*Id*.)

### b.    ADA Starishevsky's Affirmation

In his affirmation, Starishevksy expressly denied that the District Attorney's office had ever offered Petitioner a sentence of probation in exchange for a plea.  (*Id*., at 357.)  Starishevsky wrote that he "was not authorized to initiate contact with individuals who were subjects of investigation nor to negotiate the terms of cooperation agreements or plea agreements."  (*Id.*)  Instead, Starishevsky explained that another colleague, ADA Fishman, had sought Petitioner's cooperation at the inception of the investigation into AFG, but that Petitioner had declined to attend a meeting at which he could proffer information.  (*Id*., at 358.)  Starishevsky stated that, "[b]y the very nature of this exercise[,] no plea offer resolving potential charges could [have been] made unless and until the individual's information [was] heard and evaluated."  (*Id*.)  With respect to Santangelo's representation to the court at Petitioner's sentencing – that, during jury deliberations, he had been asked by Starishevsky why Petitioner had not accepted an offer of probation – Starishevksy stated in his affirmation that he had been referring to an offer to

10

Petitioner that he provide assistance as a cooperating witness, and not to an actual plea offer of probation.  (*Id*., at 359.)

Starishevsky, like Wilson, also pointed to Justice Berkman's statements during the calendar calls regarding the strength of the prosecution's case against Petitioner as evidence that Petitioner was aware of the seriousness of the charges against him.  (*Id.*)  In addition, Starishevsky noted that Petitioner had "undoubtedly" discussed with Santangelo the possibility of cooperating with the prosecution, given the statement in Petitioner's affidavit that his "attorney vehemently advised [him] against any contact with the District Attorney's Office on multiple occasions."  (*Id.*)

### c.      ADA Fishman's Affirmation

Former ADA Fishman supervised the AFG investigation from 2008 to 2010.  (*Id*., at 362.)  In his affirmation, Fishman stated that he had never communicated a plea offer of probation to Petitioner, nor had he authorized any other ADA to make such an offer.  (*Id*.) Fishman stated that he had assumed primary responsibility for negotiating and setting the terms of cooperation agreements with individuals implicated in the AFG mortgage scheme, and that he had telephoned Petitioner in 2009 in connection with those efforts.  (*Id*., at 363.)  As a result of that telephone call, Fishman was contacted by Santangelo, at which time Fishman informed Santangelo that, while, under a cooperation agreement, the District Attorney's Office would insist on a felony conviction for Petitioner, "no particular sentence was precluded or dictated . . . [and] 'everything else [was] on the table.'"  (*Id*.)  According to Fishman, at the time of these communications, evidence of Petitioner's direct involvement in multiple fraudulent transactions had not yet been developed.  (*Id*.)

**d.**        **Court's Decision on Petitioner's Section 440 Motion**

On November 1, 2013, Justice Robert M. Mandelbaum of the New York Supreme Court,

New York County, issued a decision denying Petitioner's Section 440 motion in its entirety.

(*Id*., at 389-92 (Decision and Order, dated Nov. 1, 2013).)  In rejecting Petitioner's first claim

(that he had been unaware, until the middle of trial, of the seriousness of the crimes with which

he was charged), the court determined that "under all of the circumstances of the case, there is no

reasonable possibility that [Petitioner's] allegations, made solely by [Petitioner] and unsupported

by any other affidavit or evidence, are true."  (*Id*., at 390 (citing N.Y.C.P.L. § 440.30(4)(d)).[4])

More specifically, the court reasoned as follows:

> . . . [Petitioner] was the college-educated founder and chief
> executive officer of a mortgage broker used to commit one of the
> largest and most complex mortgage frauds in the United States.
> Within days of [Petitioner's] arraignment on the instant indictment
> and release on bail, [Petitioner] was the subject of a New York
> Times article which named him and specifically noted that the
> enterprise corruption count with which he was charged carried a
> potential penalty of 25 years.  Moreover, the record reveals that on
> two separate occasions, the trial court advised the parties of the
> seriousness of the case.  First, on January 29, 2010, in the context
> of discussing whether the defendants might wish to dispose of the
> case by plea, the trial court noted, based upon a review of the
> grand jury minutes, that "continued litigation may not be in any of
> the defendants' best interest since the People appear to have an
> extraordinarily strong case," while pointing out that "the [sentence]
> numbers are pretty high."  Second, on March 19, 2010, the court
> reiterated that "if I were Mr. Shields' lawyers I would be trying to
> minimize his exposure by a plea arrangement rather than
> proceeding forward."

---

[4] This provision of the New York Criminal Procedure Law permits a trial court to deny a
Section 440.10 motion without conducting a hearing, where "[a]n allegation of fact essential to
support the motion (i) is contradicted by a court record or other official document, or is made
solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under
these and all other circumstances attending the case, there is no reasonable possibility that such
allegation is true."

(*Id*. (footnote omitted).)

In rejecting Petitioner's second claim (that his lawyer had failed to inform him of two plea offers), the trial court found that Petitioner had provided no evidence to establish that his counsel had failed to communicate any plea offer.  (*Id*.)  As to the purported offer of probation, the court found that Petitioner's own counsel had stated on the record at sentencing that no such offer had been made, and, to the extent the prosecutor may have made a remark to the contrary, the prosecutor immediately corrected it.  (*Id*.)  On this point, the court accepted the explanation contained in the submitted ADA affirmations, determining that, "the People, preindictment, [had] reached out to [Petitioner's] attorney to ask whether [Petitioner] might be interested in becoming a cooperating witness," but, after consultation with counsel, Petitioner had "declined even to meet with the District Attorney's Office, and no cooperation agreement was ever negotiated."  (*Id*., at 391.)  The court then reasoned that, "[o]bviously, without having an opportunity to evaluate [Petitioner's] potential information, no plea offer to resolve potential charges could be, or was, tendered at that early stage."  (*Id*.)  The court concluded that, "[o]f course, counsel could not have been ineffective for failing to convey an offer that never existed." (*Id*.)  As to the purported plea offer of three to nine years, the court noted that, when this offer was referenced by the prosecutor at sentencing, Petitioner "neither expressed surprise nor stated that he had never been told of such an offer, as he now claims – for the first time – three years later."  (*Id*.)  Under the circumstances, the court found that there was "no reasonable possibility" that Petitioner's allegation was true.  (*Id*., at 391-92 (again citing N.Y.C.P.L. § 440.30(d)(4).)

Finally, the court noted that, even if Petitioner's counsel had neglected to communicate to Petitioner the three-and-one-third to 10-year offer that the prosecution conceded it made, Petitioner would still not be entitled to relief because he had not shown "'a reasonable

13

probability [he] would have accepted the earlier plea offer had [he] been afforded effective

assistance of counsel.'" (*Id*., at 392 n.4 (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)).)  On

this last point, the court concluded that:

> [Petitioner's] self-serving claim that had he known of the offer, he
> would have accepted it, is insufficient to establish prejudice.
> Moreover, even now, [Petitioner] continues to maintain his
> innocence, making his proffered prejudice claim here – that he
> would have pleaded guilty in exchange for a sentence of 3 to 9
> (or 3 1/3 to 10) years in state prison if only he had known about the
> offer – difficult to credit.

(*Id.*)[5]

On November 25, 2013, Petitioner sought leave to appeal to the Appellate Division from

the denial of his Section 440 motion (*see id*., at 395), and the Appellate Division denied that

application on April 15, 2014 (*see id*., at 422 (Certificate Denying Leave, Dated Apr. 15, 2014)).

On December 10, 2013, though – after the denial of his Section 440 motion, but before

the Appellate Division had denied leave to appeal – Petitioner filed another motion in the trial

court, for leave to renew the Section 440 motion.  (*Id*., at 423 (Notice of Motion for Leave to

Renew Prior Motion to Vacate Judgment and Set Aside Sentence, dated Dec. 9, 2013).)  In

support, Petitioner offered additional evidence in the form of his own revised affidavit and an

affirmation from his former attorney, Santangelo.  (*Id*., at 424-32 (Affidavit in Support of Notice

of Motion for Leave to Renew Prior Motion to Vacate Judgment and Set Aside Sentence, sworn

to Dec. 10, 2013); 436-37 (Affirmation of Michael G. Santangelo, Esq., dated Dec. 3, 2013).)

In his revised affidavit, Petitioner argued that, in light of his educational background and

position as the CEO of AFG, "it would have been irrational" for him to proceed to trial if he had

---

[5] In Petitioner's Affidavit in Support of his Section 440 motion, Petitioner had continued
to argue that the prosecution had not been able to produce a single straw buyer who could
implicate him and that his colleagues had hidden their illegal activities from him.  (SR., at 294.)

been made aware of "the exposure [that] he faced and the plea bargains offered by the People." (*Id.*, at 428.)  Petitioner further asserted that he was not present during the March 19 calendar call, and thus did not hear Justice Berkman suggest, at that time, that it would have been in Petitioner's interest for his attorneys to seek to minimize his exposure through plea bargaining, rather than to proceed to trial.  (*Id.*)

In his affirmation, Santangelo stated that he had served as both trial counsel and appellate counsel for Petitioner.  (*Id.*, at 436.)  Santangelo also stated the following:

> . . . I have reviewed my file, as well as the sentencing minutes, and as I stated on the record, during sentencing, ADA Starishe[v]sky, stated to me during the jury deliberations, that we offered your client probation . . . .  I was never made aware of the offer of probation.  If I had been, I, of course, would have advised my client of same.

> . . . With respect to an alleged offer of three to nine (3 to 9) years, made immediately before trial, I have no recollection of ever [having] been made such an offer.  I have no notes in my file reflecting such an offer, and as such, I do not believe I ever discussed same with the defendant.

> . . . On March 19, 2010, I had a colleague, Joel Scott Ray, Esq., appear for me before the Honorable Carol Berkman.  I instructed Mr. Ray to turn over his report to ADA Harold Wilson.  In said report, Mr. Ray indicated that Judge Berkman stated that, after reviewing the Grand Jury minutes, Mr. Shields should enter a plea of guilty.  While I am certain that I read the report, I have no recollection of discussing this with Mr. Shields.

(*Id.*)

The trial court (Mandelbaum, J.S.C.) denied Petitioner's motion for leave to renew on January 8, 2014, in a summary order that did not provide reasons for the denial.  (*Id.*, at 451 (Order, dated Jan. 8, 2014).)  On February 25, 2014, Petitioner timely applied to the Appellate Division for leave to appeal from the denial of his motion to renew (*id.*, at 471-72), and, on August 14, 2014, the Appellate Division denied leave (*id.*, at 479).

### 5. *Coram Nobis* Proceedings

On August 21, 2014, proceeding *pro se*, Petitioner filed a petition in the Appellate

Division, First Department, for a writ of error *coram nobis*.  (*See id*., at 488-97 (Petition for Writ

of Error Coram Nobis, dated Aug. 21, 2014).)  In his *coram nobis* application, Petitioner argued

that he had received constitutionally ineffective assistance from Santangelo, acting as his

appellate counsel.  (*Id*., at 496.)  Specifically, Petitioner contended that Santangelo had failed to

disclose to the Appellate Division that, as trial counsel, he had failed to communicate certain

plea offers to Petitioner or to provide Petitioner with professional advice regarding those plea

offers – thereby depriving the appellate court "of the vital information it needed to render a fair

and just decision" on appeal.  (*Id*., at 496.)

The State opposed the Petitioner's *coram nobis* application (*see id*., at 534-39

(Affirmation in Opposition to Defendant's Petition for a Writ of Error Coram Nobis and Related

Relief, dated Nov. 3, 2014)), and the Appellate Division denied the application on December 11,

2014, without discussion of its substance (*id*., at 540-41 (Order, dated Dec. 11, 2014)).

Petitioner did not seek leave to appeal to the Court of Appeals.

### 6. Petitioner's Federal Habeas Petition

Petitioner, proceeding *pro se*, initiated this action on September 5, 2014, by filing a

Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (*See* Pet. (Dkt. 2).)  On

January 21, 2015, Petitioner filed his Amended Petition, asserting the ineffective-assistance-of-

trial-counsel claim that he had raised in his Section 440 motion, and the ineffective-assistance-

of-appellate-counsel claim that he had raised in his state *coram nobis* application.  (*See* Am. Pet.

(Dkt. 10-1) ¶¶ 21, 36.)

On April 28, 2015, Respondent filed a memorandum of law in opposition to the Amended Petition.  (*See* Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated Apr. 28, 2015 (Dkt. 19).)  On May 15, 2015, Petitioner filed a reply memorandum.  (Reply Brief for Petitioner, dated May 15, 2015 (Dkt. 22).)[6]

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within one year of the latest of four dates specified by statute, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[7]  28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").

_____

[6] On August 28, 2015, Petitioner also filed an application for the appointment of *pro bono* counsel to represent him in this action.  (*See* Application for the Court to Request Pro Bono Counsel, dated Aug. 28, 2015 (Dkt. 24).)  In light of this Court's recommendation that the Amended Petition be dismissed as without merit, this Court has, by separate Order of this date, denied Petitioner's application for the appointment of counsel.  (*See* Dkt. 29 (Text Order).)

[7] The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(B)-(D).

The limitations period is tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2).

### B.    Exhaustion

As a general matter, a federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the state courts.  28 U.S.C. § 2254(b)(1)(A); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct' alleged violations of . . . prisoners' federal rights."  *Picard*, 404 U.S. at 275 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  A petitioner may accomplish this in several ways, including by citing relevant provisions of the federal Constitution in his appellate brief, *see Davis v. Strack*, 270 F.3d 111, 122-23 (2d Cir. 2001), or by relying on "pertinent federal cases employing constitutional analysis," *Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted).

Aside from setting out the federal nature of his claims, the petitioner must also, for purposes of the exhaustion requirement, present those claims to "the highest court of the pertinent state."  *Larocco v. Senkowski*, 65 F. App'x 740, 742 (2d Cir. 2003); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).  In New York, for a claim that can be raised on direct appeal, a petitioner must first appeal his conviction to the Appellate Division and then seek "further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal."  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

To exhaust a claim raised before the state trial court in a collateral post-conviction

motion, as in a motion made pursuant to Section 440 of the New York Criminal Procedure Law,

the petitioner must seek leave to appeal the denial of the motion to the Appellate Division.  *See*

*Ture v. Racette*, No. 9:12-cv-01864-JKS, 2014 WL 2895439, at \*4 (N.D.N.Y. June 26, 2014)

(claim unexhausted where petitioner did not seek to appeal denial of Section 440.10 motion).

New York law, however, then provides for no further discretionary appeal.  *See Ramos v.*

*Walker*, 88 F. Supp. 2d 233, 234 n.3 (S.D.N.Y. 2000) (noting that "[a]n order denying a Section

440.10 is appealable to the intermediate appellate court by leave of a judge thereof granted under

Section 460.15[,] . . . [although] [t]here is no provision in New York law for an appeal to the

Court of Appeals from an order denying leave to appeal from an order denying a Section 440.10

motion" (internal citations omitted)).  Thus, if leave to appeal to the Appellate Division is

denied, the petitioner can proceed no further, and the federal exhaustion requirement is satisfied.

By contrast, to exhaust a federal claim that is raised in the first instance to the Appellate

Division on an application for a writ of error *coram nobis*, the petitioner must seek leave to

appeal the denial of that application to the Court of Appeals.  *See Shomo v. Maher*,

No. 04cv4149 (KMK), 2005 WL 743156, at \*3 (S.D.N.Y. Mar. 31, 2005) (citing to N.Y.C.P.L.

§§ 450.90(1), 460.10(5)(a)).

C.    **Standard of Review**

When this Court reviews a federal constitutional claim has been adjudicated on the merits

by the state court, the Court must accord substantial deference to the state court's decision under

the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *see also Sellan v.*

*Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means

"a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the

substance of the claim advanced, rather than on a procedural, or other, ground").  The relevant

section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established [f]ederal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by "clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000).  An "unreasonable application" of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to "a set of facts different from those of the case in which the principle was

announced."  *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).  The state court's decision, however,

"must have been more than incorrect or erroneous"; rather, "[t]he state court's application must

have been 'objectively unreasonable.'"  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting

*Williams*, 529 U.S. at 409).  In order to be entitled to habeas relief, the petitioner must show that

"the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Similarly, a state court's factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Instead, in order to obtain habeas relief on the basis of a state court's "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a petitioner must not only show "by clear and convincing evidence" that a factual finding made by the court was incorrect, 28 U.S.C. § 2254(e)(1), but must also demonstrate "that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court," *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).  A factual determination may be unreasonable if it "cannot reasonably be reconciled" with the evidence presented in the state proceeding. *Jones v. Murphy*, 694 F.3d 225, 235 (2d Cir. 2012).  These standards are "demanding," *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005), even if "not insatiable," *id.* (noting that "[d]eference does not by definition preclude relief" (quoting *Cockrell*, 537 U.S. at 340)).

When this Court proceeds to consider a substantive claim that has not been decided by the state courts on the merits, this Court must consider the claim under a *de novo* standard of review.  *See Carvajal v. Artus*, 633 F.3d 95, 111 n.12 (2d Cir. 2011), *cert. denied* 132 S. Ct. 265; *see also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007); *Smith v. Fischer*, 957 F. Supp. 2d 418, 434 (S.D.N.Y. 2013).

## II.    THE AMENDED PETITION SHOULD BE DISMISSED.

### A.    Timeliness of Petition

As a threshold matter, this Court finds that Petitioner filed his federal habeas Petition, as well as his Amended Petition, within the one-year statute of limitations provided by AEDPA.

Petitioner's judgment of conviction was entered on September 21, 2010, and was affirmed by the Appellate Division on November 27, 2012.  *See Shields*, 954 N.Y.S.2d 97. Petitioner did not seek leave to appeal to the Court of Appeals.  Thus, Petitioner's conviction became final 30 days after the Appellate Division's decision, on December 27, 2012, when the time for seeking leave to appeal expired.  *See* N.Y.C.P.L. § 460.10(5)(a) (providing that appellant must apply to Court of Appeals for leave to appeal within 30 days of an intermediate appellate court's order).

Although the one-year statute of limitations thus began to run on December 27, 2012, the statute was tolled by Petitioner's proper filing of a collateral Section 440 motion, seeking to vacate his conviction.  *See* 28 U.S.C. § 2244(d)(2).  Petitioner filed that motion on June 28, 2013, 183 days after the limitations period commenced.  (*See* SR., at 291-92.)  The statute of limitations remained tolled until April 15, 2014, when the Appellate Division denied Petitioner leave to appeal the denial of his Section 440 motion (*id.*, at 422) – and then further remained tolled until August 14, 2014, when the Appellate Division denied Petitioner leave to appeal from the trial court's separate denial of his application to renew that motion (*id.*, at 479).  At that point, Petitioner no longer had any properly filed application for relief pending in the state courts, and the statute of limitations began to run again.  *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").  The statute then ran for seven days, until August 21, 2014, when Petitioner filed his petition for a writ of error *coram nobis* (*see* SR., at 488-97), which again operated as a toll.  On December 11, 2014, the Appellate Division denied Petitioner's application for *coram nobis* relief.  (*See id.*, at 541.)

On September 5, 2014, while his application for a writ of error *coram nobis* was still pending, Petitioner initiated this action by filing his Petition.  (*See* Pet.)  At that time, based on the above, the statute of limitations had only run for 190 days.  Even when Petitioner filed his Amended Petition, on January 21, 2015, the one-year limitations period had not expired because the statute of limitations remained tolled until December 11, 2014, when the Appellate Division finally denied Petitioner's *coram nobis* application.  This added only another 41 days to the clock, such that only 231 days of the limitations period had run before that Amended Petition was filed.  Accordingly, regardless of whether the claims asserted by Petitioner in the Amended Petition may be said to arise out of the same set of operative facts as Petitioner's originally asserted habeas claims, thus permitting his Amended Petition to "relate back" to the original filing date, *see Jenkins v. Greene*, 646 F. Supp. 2d 615, 621 (S.D.N.Y. Aug. 18, 2009); *Pierre v. Ercole*, 607 F. Supp. 2d 605, 608 (S.D.N.Y. Apr. 15, 2009), the claims raised in the Amended Petition should be found to have been asserted on a timely basis.

### B.    Petitioner's Habeas Claims

Petitioner raises two grounds for habeas relief:  that he received constitutionally ineffective assistance from (1) his trial counsel, and (2) his appellate counsel.  (*See* Am. Pet., ¶¶ 20-50.)  The first of these claims is fully exhausted, and, as discussed below, was decided on the merits by the state trial court, on Petitioner's Section 440 motion.  The claim must therefore be reviewed by this Court under the standard of review set out in AEDPA, and, under that highly deferential standard, the claim cannot survive.  The second of Petitioner's claims is not exhausted, as Petitioner raised it in a state *coram nobis* proceeding, but then did not seek leave to appeal from the Appellate Division's denial of the claim.  At this point, for the reasons explained below, the claim is procedurally barred from review by this Court, and Petitioner has not

demonstrated that he can overcome that bar.  Even if he could, the claim would fail for lack of

merit.  Thus, Petitioner cannot prevail on either claim.

### 1.    Ineffective Assistance of Trial Counsel

#### a.    The Claim Is Exhausted.

In his first habeas claim, Petitioner contends that Santangelo, acting as his trial counsel,

was constitutionally ineffective in failing to advise him of a plea offer made by the prosecution

and for failing to provide professional advice as to whether Petitioner should accept that offer in

light of his potential sentencing exposure.  (*See* Am. Pet. ¶ 21.)  Petitioner raised this claim, in

federal terms, in his Section 440 motion.  (*See* SR., 293 (citing the Sixth Amendment).)  He then

raised the claim to the Appellate Division, in a letter seeking leave to appeal.  (*See id*., at 397-

402 (again citing federal law).)  Further, in a motion to renew, he provided the state court with

additional evidence to support his claim (*id*., at 424-32), and he timely appealed the denial of that

motion, as well (*id*., at 454-61).  On this record, this Court finds that the claim he now presents

was fully exhausted in the state courts.  *See Colon v. Sheahan*, No. 13cv6744 (PAC) (JCF), 2016

WL 3926443, at *3 (S.D.N.Y. July 14, 2016) ("Since there is no appeal as of right from a trial

court's denial of a CPL § 440.10 motion, the claim exhaustion requirement mandates that leave

to appeal be sought from the Appellate Division; if leave is denied, the claim is deemed

exhausted.").

#### b.    The Last-Reasoned Decision of the
State Courts Denied the Claim on the Merits.

In denying Petitioner's Section 440 motion, the trial court expressly invoked

Section 440.30(4)(d) of the New York Criminal Procedure Law (*see* SR., at 390, 392), which, as

noted above (*see supra* at n.4), provides that the state court may deny a motion to vacate without

a hearing if the court, "[u]pon considering the merits of the motion," determines that "[a]n

24

allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true," N.Y.C.P.L. § 440.30(4)(d).

The court found this provision applicable as a result of (1) its determination that Petitioner had not supplied any evidence to support his claim that his trial counsel had failed to communicate the existence of a plea offer or to explain the advisability of accepting that offer in light of the possible sentence Petitioner could face if convicted, as well as (2) its further determination that Petitioner's claim that he would have accepted the offer, had he known of it, was based solely on his own, self-serving statement. (*See* SR., at 390-92.) On the latter point, the trial court also noted that Petitioner's claim that he would have pleaded guilty in exchange for a sentence of three to nine (or three-and-one-third to 10) years in prison was "difficult to credit," in light of the fact that Petitioner continued to maintain his innocence, even in arguing the merits of his Section 440 motion. (*Id.*, at 392 n.4.) Following the court's decision, Petitioner filed a motion for leave to renew his Section 440 motion, attaching a revised affidavit from himself and a newly submitted affidavit from Santangelo. (*Id.*, at 423-37.) The trial court denied Petitioner's leave to renew without opinion, issuing a summary order that merely stated: "Ordered that upon the papers submitted, this motion is hereby denied." (*Id.*, at 451.)

Although a state court is permitted to dismiss a motion under Section 440.30(4)(d) of the New York Criminal Procedure Law only "[u]pon considering the merits of the motion," N.Y.C.P.L. § 440.30(4), courts in this Circuit have reached different conclusions as to whether a state court's denial of a federal claim under that provision constitutes (a) a decision on the merits of the claim, or (b) a state-law, procedural ground for decision giving rise to a procedural bar to

federal habeas review.  Those courts that have found that dismissal under Section 440.30(4)(d) results in a procedural bar have reasoned that state law requires a movant to support his allegations with sworn statements, and that the denial of a Section 440.10 motion based on the movant's failure to do so constitutes judicial reliance on an adequate and independent state procedural rule.  *See, e.g., Williams v. McGinnis*, No. 04-CV-1005 (NGG), 2006 WL 1317041, at *10 (E.D.N.Y. May 15, 2006) (finding that claim was procedurally barred because petitioner's Section 440.10 motion did not satisfy the "bare minimum procedural requirement" of Section 440.30(4)(d)); *Shaw v. Artuz*, No. 99cv9754, 2001 WL 1301735, at *4 (S.D.N.Y. Oct. 19, 2001) ("Shaw has also defaulted this claim because he failed to comply with New York Criminal Procedure Law § 440.30(4)(b), which requires appellants to support their allegations with sworn statements.").

By contrast, those courts that have found the opposite have determined that, because "[S]ection 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon considering the merits,' . . . a denial based on [S]ection 440.30(4) is a decision on the merits, and cannot be a procedural bar to a federal *habeas* claim."  *Williams v. Duncan*, No. 9:03cv568 (LEK/RFT), 2007 WL 2177075, at *14 (N.D.N.Y. July 27, 2007); *see also Lopez v. Ercole*, No. 09cv1398 (PAC) (AJP), 2010 WL 1628994, at *19 (S.D.N.Y. Apr. 21, 2010) (citing cases on either side of the split, and concluding that denial pursuant to Section 440.30(4)(d) is merits-based), *report and recommendation adopted*, 2014 WL 285079 (Jan. 27, 2014), *aff'd*, 588 F. App'x 39 (2d Cir. 2014); *Washington v. Cuomo*, No. 06-CV-6477 (CBA), 2009 WL 3379076, at *4 (E.D.N.Y. Oct. 19, 2009) (noting split but finding that "better reasoned authority" has concluded that Section 440.30(4)(d) does not act as a procedural bar to habeas review); *Edwards v. Mazzuca*, No. 00cv2290 (RJS) (KNF), 2007 WL 2994449, at *15

26

(S.D.N.Y. Oct. 15, 2007) (finding that denial under 440.30(4)(d) "is a merits-based decision and not a procedural bar").

Although the Second Circuit has not directly addressed this conflict, it has determined that a dismissal under a different provision of the same subsection constitutes a merits-based adjudication.  In *Garcia v. Portuondo*, the Second Circuit found that, "based upon the plain language of the statute," a decision under Section 440.30(4)(c), which permits the court to dismiss a Section 440.10 motion without a hearing if "[a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof," N.Y.C.P.L. § 440.30(4)(c), is a judgment on the merits.  104 F. App'x 776, 779 (2d Cir. 2004).  In so holding, the Second Circuit stated:

> Even aside from the fact that the provision opens with an explicit reference to 'considering the merits of the motion,' subsection (c) implicitly requires a balancing of the evidence presented by the parties by, first, calling for an identification by the court of those facts that are 'essential to support the motion' and, then, requiring the court to evaluate whether those facts are 'conclusively refuted' by the documentary evidence.

*Id*.  As the Second Circuit's analysis of this provision is equally applicable to Section 440.30(4)(d), which opens with the same explicit reference to the merits of the motion and permits a court to dismiss a motion without a hearing only after determining that an allegation of fact is "essential" and evaluating whether the allegation "is contradicted by a court record or other official document" or "is unsupported by any . . . evidence,"  N.Y.C.P.L. § 440.30(4)(d), this Court accepts the line of authority holding that a denial under that provision constitutes a decision "on the merits," for purposes of habeas review, *see also Lopez v. Ercole*, 588 F. App'x 39 (2d Cir. 2014) (noting, in *dicta*, the court's view that the petitioner's claim, which was denied under Section 440.30(4)(d), "ha[d] been adjudicated on the merits by the state court"); *Bethea v.*

*Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *13 (E.D.N.Y. Jan. 19, 2016) (noting that, "[a]fter *Garcia*, a number of district courts within the Second Circuit have applied a similar analysis" to claims denied under other subsections of N.Y.C.P.L. § 440.30(4)).

Further, the trial court's denial of Petitioner's motion for leave to renew should be considered an adjudication on the merits for AEDPA purposes, notwithstanding the fact that the state court did not articulate the reasons for its decision. *See Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) ("[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." (citing *Harrington v. Richter*, 562 U.S. 86 (2011)); *Washington v. Brown*, No. 09cv544 (JG), 2009 WL 1605553, at *3 (E.D.N.Y. June 8, 2009) ("If a state court's summary disposition of a petition does not expressly indicate that a claim was denied as procedurally barred, a federal court must presume that the state court denied that claim on the merits." (citing *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006))).

Accordingly, this Court reviews Petitioner's ineffective-assistance-of-trial-counsel claim under the standard of review set out in AEDPA, such that this Court may only recommend habeas relief if the decision of the trial court – as the last-reasoned state court opinion on the claim – was contrary to, or involved an unreasonable application of, clearly established federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) (holding that, in reviewing whether habeas relief should be granted, a federal court should look to the last reasoned decision of the state courts).

c.   **The Claim Must Be Denied, Under *Strickland*
and the Deferential AEDPA Standard of Review.**

i.   **The *Strickland* Standard**

For AEDPA purposes, *Strickland v. Washington*, 466 U.S. 668 (1984), sets out the "clearly established federal law" regarding a defendant's constitutional right to the effective assistance of counsel, *see, e.g., Harrington*, 562 U.S. at 101 (habeas petitioner must establish that *Strickland* was applied unreasonably by state courts).  To prevail on an ineffective assistance claim under *Strickland*, a habeas petitioner must generally show that:  (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) he suffered prejudice as a result.  *Id*. at 688, 691, 694.  As to the first prong of this test, there is a strong presumption that counsel's conduct fell within the range of reasonably professional assistance.  *See id*. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").  With regard to prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

In the context of plea negotiations, to render objectively reasonable assistance, counsel "must always communicate to the defendant the terms of any plea bargain offered by the prosecution."  *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) (applying the first prong of the *Strickland* test); *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (holding that two-pronged standard of *Strickland* applies to ineffective-assistance claims arising out of the plea process).  Additionally, counsel must advise the defendant regarding the acceptance or rejection of the plea offer's terms, "and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most

likely be exposed." *Purdy v. United States*, 208 F.3d 41 (2d Cir. 2000). Counsel's failure to inform a defendant of the sentencing exposure he would face if convicted may constitute unreasonable assistance under the first prong of *Strickland*. *See Carrion v. Smith*, 365 F. App'x 278, 282 (2d Cir. 2010).

Even if a petitioner is able to demonstrate that his counsel's representation during the plea bargaining process fell below an objective standard of reasonableness, however, the petitioner must still demonstrate that he suffered actual prejudice. *See Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012). To show the requisite prejudice in this context, the petitioner must demonstrate that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Specifically, the petitioner is required to show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the [petitioner] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Further, where this Court's deference under AEDPA is required, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his [ineffective-assistance] claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, [the petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "[T]he question is not whether counsel's actions were

reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

Here, Petitioner has not shown that, in denying his Section 440 motion and later motion to renew, the trial court made unreasonable findings of fact based on the record before it, *see* 28 U.S.C. § 2254(d)(2), or ultimately ruled in a manner that was either contrary to *Strickland* or unreasonably applied its holdings, 28 U.S.C. § 2254(d)(1).

## ii.     Adequacy of Counsel's Performance

As an initial matter, this Court cannot conclude that the trial court unreasonably applied *Strickland* in determining that Petitioner had not demonstrated, either in his original Section 440 motion or in his motion for leave to renew, that his counsel had failed to communicate the existence of a plea offer or to advise him of his possible sentencing exposure in connection with that plea offer.

This is not a case where the prosecution has categorically denied that any plea offer was made; to the contrary, the prosecution has conceded in opposition to Petitioner's Section 440 motion that, just before trial, Petitioner was offered a plea deal for a sentence of three-and-one-third to 10 years' imprisonment.  (SR., at 331.)  Further, the prosecutor who attended Petitioner's sentencing told the sentencing court on the record that, prior to trial, Petitioner had been offered three to nine years.  (*See id.*, at 323.)  While the prosecutor's statement at sentencing may have been in error, the offer that was described, at that time, was not far off from the three-and-one-third to 10 year sentence that the prosecution later acknowledged, and, in this regard, the sentencing transcript lends support to the conclusion that an offer in that range was, in fact, made.

31

Despite Petitioner's suggestion in his Section 440 motion, however, it is not clear from the record that any prosecutor ever offered Petitioner *probation* in exchange for a plea (*see id.*, at 298-300), and, to the contrary, ADAs Starishevsky and Fishman went to some pains in opposition to Petitioner's motion to deny this, and to explain, under penalty of perjury, that, early in the prosecution's investigation, Petitioner was merely offered an opportunity to cooperate – which could have eventually led to a plea offer with a more lenient sentence – but that Petitioner never even agreed to attend a proffer session (*see id.*, at 357-60, 362-63).  In addition, Santangelo's statements to the trial court, both on the record at sentencing and, under penalty of perjury, in connection with Petitioner's motion to renew his Section 440 motion, are entirely consistent with the prosecution's representations that no offer of probation was ever made.  In this respect, Santangelo told the sentencing court that no such offer was ever conveyed to him (*id.*, at 321), and, in his later affirmation, he reiterated that he was never made aware of such an offer (*id.*, at 436).  It was Petitioner's burden to demonstrate, in the first instance, that a specific plea offer was actually made, and it was not unreasonable for the trial court to have reviewed the record and determined that it reflected that there "had never," in fact, "been an offer of probation."  (*Id.*, at 390-91 (noting that any suggestion to the contrary was immediately corrected before the sentencing court, and that, in the absence of any cooperation agreement, proffer of information by Petitioner, or opportunity by the prosecution to evaluate any such information, "no plea offer to resolve potential charges could be, or was, tendered at that early stage"); *see* 28 U.S.C. § 2254(d)(2).)

As to the admitted plea offer of three-and-a-third to 10 (or perhaps three to nine) years, the trial court, in denying Petitioner's Section 440 motion, exhibited some skepticism that Petitioner had not actually been informed of that offer, when made.  On this point, the court

noted that, when, at Petitioner's sentencing, the prosecutor referred to a pre-trial offer of three to

nine years, Petitioner, "who spoke at sentencing, neither expressed surprise nor stated that he had

never been told of such an offer, as he now claims – for the first time – three years later." (*Id.*,

at 391.)  It is also notable that the only evidence presented by Petitioner in his Section 440

motion to support his contention that he was never made aware of the offer was Petitioner's own

self-serving statement to that effect.  (*Id.*, at 296-301.)  Although, in his motion to renew his

Section 440 motion after its denial, Petitioner sought leave to augment the record with an

affirmation from Santangelo, that affirmation added little to support Petitioner's contention that

his counsel had failed to inform him of the offer, as Santangelo merely affirmed that he had "no

recollection" of the offer being made.  (*Id.*, at 436.)  Similarly, Petitioner's statement in his own

revised affidavit that he had not been present at the March 2010 calendar call (*id.*, at 428)

provided little support for his claim that he was unaware of the seriousness of the charges

against him, as, even if true, this fact would only have meant that he was present to hear

Justice Berkman comment on his sentencing exposure once, during the January 2010 calendar

call (*id.*, at 345), rather than twice.

　　　　Based on nothing more than (a) the prosecution's admission that a plea offer was made,

and (b) Petitioner's statement that he was unaware of that offer, it could be argued that the trial

court should have held a hearing to determine whether Santangelo had, in fact, failed to convey

the offer to Petitioner and to advise Petitioner as to whether he should accept it.  Taking the

record as a whole, though, and in light of the meager quality of Petitioner's presented evidence

on this point, this Court cannot conclude that no "fairminded jurist" could have made the

determination that the trial court made here – that Petitioner's claim that his counsel had failed in

this regard was inadequately supported.  *See Harrington*, 562 U.S. at 101-02; *see also Bonilla v.*

*Lee*, 35 F. Supp. 3d 551, 576 (S.D.N.Y. 2014) (concluding that "wholly unsubstantiated" allegations regarding counsel's failure to advise petitioner of a plea offer did not establish that representation was deficient).

### iii.   <u>Lack of Prejudice</u>

In any event, even setting aside the question of whether Petitioner's trial counsel failed to convey a plea offer or to advise him adequately regarding that offer, this Court could not recommend that Petitioner be granted habeas relief on his ineffective-assistance-of-trial-counsel claim, given that Petitioner has not put forth any evidence of prejudice, as necessary to meet the second prong of the *Strickland* standard.  To demonstrate the requisite "prejudice" in this context, Plaintiff would have needed to provide objective evidence, apart from his own "self-serving, post-conviction testimony," that he would have accepted the plea offer, had he been made aware of it.  *See Osorio v. Conway*, 496 F. Supp. 2d 285, 303 (S.D.N.Y. 2007) (quoting *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 2002)).  Examples of such objective evidence might include evidence of a substantial disparity between the plea offer and the actual sentence, or evidence that the petitioner had shown a willingness to accept responsibility for his criminal conduct.  *See id*. at 303-04 (citing *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999); *see also Raysor v. United States*, 647 F.3d 491, 496 (2d Cir. 2011) (finding *prima facie* showing of prejudice due to substantial disparity between a 29-year offer and a sentence of multiple life terms); *Muyet v. United States*, No. 03cv4247 (PKL), 2009 WL 2568430, at *5 (S.D.N.Y. Aug. 19, 2009) (finding that petitioner did not demonstrate reasonable probability that he would have accepted plea offer where "throughout the trial there was no indication that [the petitioner] was willing to accept guilt").

Here, the disparity between the plea offer that the prosecution concedes was made (three-and-one-third to 10 years) and the sentence Petitioner actually received (five-and-one-half to 16-and-one-half years) was not great.  While there is "no minimum amount of additional period of incarceration to warrant a finding of prejudice," *Percan v. United States*, 294 F. Supp. 2d 505, 512 (S.D.N.Y. 2003) (citing *Glover v. United States*, 531 U.S. 198, 203-204 (2001)), in cases where prejudice has been found based on sentence disparities, the disparities have generally been more significant than this, *see, e.g., Raysor*, 647 F.3d at 496; *Gordon*, 156 F.3d at 380-81 (holding that prejudice was established by disparity between counsel's erroneous estimate of 120 months of incarceration as opposed to the 262-327 months defendant actually faced); *Carrion v. Smith*, 644 F. Supp. 2d 452, 471 (S.D.N.Y.2009) (finding prejudice based on "extremely large" disparity between offer of 10 years to life and the sentence of 125 years to life), *aff'd*, 365 F. App'x at 279-85).  In contrast, relatively modest disparities have generally not been found to support an inference that the defendant, had he known of the offer, would have accepted it.  *See, e.g.*, *Percan*, 294 F. Supp. 2d at 512 (holding that disparity between sentence of 120 to 144 months and offer of 72 months was not significant enough to support presumption that defendant would have pled guilty).  Moreover, even a significant disparity between the plea offer and sentence does not mandate a finding of prejudice in every case, *see Muyet*, 2009 WL 2568430, at *5, as other relevant evidence should also be considered.

Of particular importance here, Petitioner continued to maintain his innocence throughout trial, after trial, and even in the very Section 440 motion in which he argued that he would have accepted the prosecution's plea offer, had he known of it.  At his sentencing, Petitioner gave no response to the prosecution's statement that a plea had been offered, and, instead, used his opportunity to address the court to argue that he was ignorant of AFG's criminal activity.  (*Id.*,

at 325.)  Years later, right at the outset of the papers he filed in support of his Section 440 motion, Petitioner again argued his innocence, stating that he was "kept in the dark" regarding the fraudulent activities of AFG's New York office and that there was "considerable evidence . . . showing that [he] was not a criminal participant in the mortgage fraudulent scheme."  (SR., at 294-95.)

In its decision denying Petitioner's Section 440 motion, the trial court – as set out above (*see* Procedural History, *supra*, at 4(d)) – expressly acknowledged the applicable federal standard for finding ineffective assistance of counsel in the context presented; found that Petitioner's "self-serving statement that[,] had he known of the offer, he would have accepted it, [was] insufficient to establish prejudice"; and further observed that Petitioner's continued maintaining of his innocence made his claim of prejudice "difficult to credit" (SR., at 392 n.4).  It was entirely appropriate for the court to have determined that Petitioner's evidence of prejudice was insufficient, and that his insistence on his innocence weighed against a finding that he would have accepted a plea deal.  *See Abraham v. Lee*, No. 13cv2525 (RWS), 2014 WL 3630876, at *9 (S.D.N.Y. July 22, 2014) ("Petitioner's argument that he would have accepted the plea bargain instead of going to trial is belied by his continued claim of innocence."); *Melo v. United States*, 825 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) ("Insistence on innocence, although not dispositive, weighs against finding that [the petitioner] would have accepted a plea deal."); *see also Page v. Martuscello*, No. 10cv9699 (JSR) (AJP), 2011 WL 3678820, at *28-29 (S.D.N.Y. Aug. 23, 2011) (finding that, where petitioner's "continued protestations of innocence" were inconsistent with his claim that he would have plead guilty if properly advised, disparity between a 12-year offer and 60-year-to-life sentence did not mandate finding of prejudice), *report and*

*recommendation adopted*, 2013 WL 1092825 (S.D.N.Y. Mar. 15, 2013), *aff'd*, 561 F. App'x 118 (2d Cir. 2014).[8]

On this record, the trial court's rejection of Petitioner's ineffective-assistance-of-trial-counsel claim – through the court's denial of Petitioner's Section 440 motion and his later motion to renew – represented a reasonable application of the *Strickland* standard.  Accordingly, I recommend that Petitioner's first habeas claim – for ineffective assistance of trial counsel – be dismissed under AEDPA.  See 28 U.S.C. § 2254(d).

### 2.    Ineffective Assistance of Appellate Counsel

### a.    The Claim Is Unexhausted.

Petitioner properly raised his second habeas claim – that Santangelo, acting as appellate counsel, provided ineffective assistance by failing to raise an ineffective-assistance-of-trial-counsel on appeal – in a *coram nobis* application to the Appellate Division.  (SR., at 488-97.) When that application was denied, however, Petitioner did not seek leave to appeal to the New York Court of Appeals.  For this reason, the claim cannot be considered exhausted for purposes of federal habeas review.  *See Shomo*, 2005 WL 743156, at *3 (holding that claim raised in petition for writ of error *coram nobis* was unexhausted, as New York provides for permissive appeal to Court of Appeals upon denial of such an application).

---

[8] Even in Petitioner's motion for leave to renew his Section 440 motion, after its denial, Petitioner did not abandon his claim of innocence; rather, he primarily argued that, regardless of that claim, he would have accepted a plea bargain had he been able to weigh all relevant considerations – including the consideration that, "despite evidence," a jury would have likely believed him guilty.  (*See* SR., at 427.)

**b.      The Claim Should Be Deemed Exhausted,
<u>Rendering It Procedurally Barred From Habeas Review.</u>**

Where a claim has not been exhausted in the state courts, but the petitioner no longer has

any available avenue to return to the state courts to exhaust the claim, the habeas court should

"deem" the claim exhausted.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Grey v. Hoke*,

933 F.2d 117, 120-21 (2d Cir. 1991); *cf*. 28 U.S.C. § 2254(b)(3) ("An applicant shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented.").

Here, given that Petitioner's time to seek leave from the denial of his *coram nobis*

application has now expired, *see* N.Y.C.P.L. § 460.10, Petitioner can no longer exhaust his

ineffective-assistance-of-appellate-counsel claim in the state courts.  This claim should therefore

be "deemed exhausted" for purposes of federal habeas review.  *See Castille*, 489 U.S. at 351;

*Grey*, 933 F.2d at 120-21.

Where, however, a claim is "deemed" exhausted, the state procedural bar that gives rise

to that form of exhaustion "provides an independent and adequate state-law ground for the

conviction and sentence," and thus the claim will also be procedurally barred from federal

habeas review.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *see also Hawkins v. Lape*,

No. 08cv2669 (BMC), 2009 WL 890549, at *4 (E.D.N.Y. Mar. 30, 2009) (finding that claims

raised on *coram nobis* petition were procedurally barred where petitioner did not seek leave to

appeal denial of petition); *Castro v. Fisher*, No. 04cv0346 (DLC), 2004 WL 2525876, at *8

(S.D.N.Y. Nov. 8, 2004) (same).  A petitioner can only overcome this procedural bar by showing

both "cause" for the procedural default and "prejudice" resulting therefrom, *Gray*, 518 U.S.

at 162; *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012); *Coleman v. Thompson*, 501 U.S.

722, 749-50 (1991), or that a failure by the Court to consider the claim would result in a

"fundamental miscarriage of justice," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750).

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99cv12015 (AGS) (JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001). More specifically, a petitioner can show "cause" for a procedural default when (1) "the factual or legal basis for a claim was not reasonably available," (2) "some interference by state officials made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (internal quotation marks and citations omitted).

As for the "prejudice" prong, while the Supreme Court has not given "precise content" to the term "prejudice" in this context, *see Wainwright*, 433 U.S. at 91, it has made clear that a petitioner must show more than "a *possibility* of prejudice," and that the legal errors raised in the petitioner's defaulted claim "worked to [the petitioner's] *actual* and substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). This is "a significantly higher hurdle than would exist on direct appeal," *id*. at 166, as the degree of prejudice must be sufficient "to overcome society's justified interests in the finality of criminal judgments," *id*. at 175.

To satisfy the "fundamental miscarriage of justice" exception to the procedural bar, the petitioner must make a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). "Actual innocence" means "factual innocence, not mere legal insufficiency." *Dunham*, 313 F.3d at 730 (citations omitted).

### c.      **Petitioner Cannot Overcome the Procedural Bar.**

In light of the procedural bar, this Court can only review Petitioner's ineffective-assistance-of-appellate-counsel claim if Petitioner can overcome that bar by demonstrating:  (1) both cause for failing to exhaust his claim in the state courts and prejudice resulting from the default, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750. Petitioner, however, has demonstrated neither.

Certainly, Petitioner has not demonstrated – or even alleged – that any external factor prevented him from filing a timely application for leave to appeal the denial of his *coram nobis* application to the Court of Appeals.  As Petitioner has therefore not shown cause for his procedural default, this Court need not even reach the question of whether Petitioner can show actual prejudice.  *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Nonetheless, this Court notes that Petitioner has also not demonstrated the requisite prejudice, as he has not shown that, had his ineffective-assistance-of-trial-counsel claim been raised by Santangelo on direct appeal, it would have had any realistic chance of success.  Rather, as that claim was necessarily based on information outside the record – *i.e.*, it was based on a contention by Petitioner that his trial counsel had failed to advise him regarding a plea offer – the claim would have been unreviewable on direct appeal.  *See, e.g., People v. Maxwell*, 14 N.Y.S.3d 32, 35 (1st Dep't 2015) (holding that ineffective-assistance-of-counsel claim was unreviewable on direct appeal because it involved matters not fully explained by the record);

*People v. Harmon*, 854 N.Y.S.2d 714, 714 (1st Dep't 2008) ("Defendant's ineffective assistance

of counsel claims are unreviewable on direct appeal because they involve matters outside the

record including attorney-client consultations and the attorney's plea-bargaining strategy.").

This Court also notes that Petitioner actually raised this non-record-based claim through the

proper channel – a collateral motion to vacate his conviction, under N.Y.C.P.L. § 440 – and that,

for the reasons discussed above, the trial court reasonably concluded that the claim lacked merit.

Where a petitioner would be unlikely to succeed on a claim had it been advanced on direct

appeal, he cannot prevail on a claim that his appellate counsel provided ineffective assistance for

failing to raise it.  For this reason, Petitioner cannot show that he suffered prejudice as a result of

his failure to exhaust his ineffective-assistance-of-appellate-counsel claim.  *See, e.g.*, *Brown v.*

*Martuscello*, No. 12-CV-0054 (PKC), 2014 WL 415950, at *10 (E.D.N.Y. Feb. 4, 2014)

("Petitioner cannot demonstrate prejudice if the Court does not review his claims[,] because they

lack merit."); *Gomez v. Brown*, 655 F. Supp. 2d 332, 346 (S.D.N.Y. 2009) (holding that

petitioner could not show prejudice arising from failure to review claim procedurally barred due

to failure to raise it on appeal, because claim was without merit).

        Nor has Petitioner demonstrated a sufficient probability that this Court's failure to review

his defaulted claim for ineffective assistance of appellate counsel would result in a "fundamental

miscarriage of justice."  *Edwards*, 529 U.S. at 451 (citing *Coleman*, 501 U.S. at 750).  This

exception to the procedural bar is quite narrow; as noted above, it is "concerned with actual as

compared to legal innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  To meet this

standard, a petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  Moreover, "[t]o be

credible, [a claim of actual innocence] requires petitioner to support his allegations of

constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "Without any new evidence of innocence, even the

existence of a concededly meritorious constitutional violation is not in itself sufficient to

establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred

claim."  *Id.* at 316.  It is extremely rare that a petitioner will be able to satisfy the actual

innocence standard.  *See id.* at 324 ("[I]n virtually every case, the allegation of actual innocence

has been summarily rejected." (citation omitted)).  In this case, despite his self-serving

protestations of innocence, Petitioner has not submitted any new evidence showing that he is

actually innocent, and the "fundamental miscarriage of justice" exception to the procedural bar is

therefore inapplicable.

### d.    Even If Petitioner Could Overcome the Bar, His Claim Would Fail on the Merits.

Finally, this Court notes that, if Petitioner were somehow able to overcome the

procedural bar to habeas review of his ineffective-assistance-of-appellate-counsel claim, the

claim would, in any event, fail for lack of merit.

As applied to a claim for ineffective assistance of appellate counsel, the two-pronged test

articulated in *Strickland* requires a habeas petitioner to show that (1) appellate counsel acted

objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's

deficient performance, there was a reasonable probability that the petitioner's appeal would have

been successful.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* to claim

for ineffective assistance of appellate counsel); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)

(holding that "[t]he *Strickland* standard" is "the relevant 'clearly established Federal law, as

determined by the Supreme Court of the United States'" applicable to claims of ineffective

assistance of appellate counsel (quoting 28 U.S.C. § 2254(d))).  A petitioner may demonstrate the objectively unreasonable performance of appellate counsel "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Appellate counsel does not, however, have a duty to advance every available non-frivolous argument on appeal, given that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-52, 754 (1983).

Here, as discussed above, Petitioner's ineffective-assistance-of-trial-counsel claim would likely have been rejected on direct appeal; even apart from its substantive weakness, the claim was not record-based, and thus was not capable of review on appeal.  Under *Strickland*, appellate counsel had no constitutional duty to raise a claim, on direct appeal, that had no reasonable chance of success.  *See Peralta v. Connelly*, No. 06cv5360 (DAB) (MHD), 2008 WL 8050791, at *12 (S.D.N.Y. Apr. 18, 2008) (finding that appellate counsel cannot have been ineffective for failing to raise a claim that was not cognizable on direct appeal), *report and recommendation adopted*, No. 06cv5360 (DAB), 2010 WL 3219326 (S.D.N.Y. Aug. 11, 2010).

Accordingly, I recommend that the Court dismiss Petitioner's second habeas claim – for ineffective assistance of appellate counsel – as procedurally barred and, in any event, without merit.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Amended Petition for a writ of habeas corpus be DISMISSED in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, United States Courthouse, 500 Pearl Street, New York, New York 10007, Room 1020, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities that are unpublished or reported exclusively on computerized databases that are] cited in a decision of the Court and were not previously cited by any party").

Dated:  New York, New York
        August 16, 2016

                                        Respectfully submitted,

                                        _DEBRA FREEMAN_
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Hon. P. Kevin Castel, U.S.D. J.

Mr. Eric Shields
415 Ridley Avenue
Ridley Park, PA 19078

Respondent's Counsel (via ECF)